**HOMEOWNERS GROUP, INC.,**
Plaintiff–Appellee,

v.

**HOME MARKETING SPECIALISTS,**
**INC., Defendant–Appellant.**

**No. 90–1665.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 15, 1991.

Decided April 24, 1991.

Richard E. Rassel, Susan Carino Nystrom, Mark R. Lezotte, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., Mark S. Bicks, Alfred N. Goodman (argued), Washington, D.C., for plaintiff-appellee.

Scott D. Moore, Bushnell, Gage, Doctoroff & Reizen, Southfield, Mich., Paul R. Gupta (argued), Boston, Mass., for defendant-appellant.

Before MERRITT, Chief Judge, KENNEDY and JONES, Circuit Judges.

KENNEDY, Circuit Judge.

This is a service mark infringement case involving two companies with service marks containing the initials HMS. Homeowners Group, Inc. ("Homeowners") brought this suit asserting that use of a

mark containing the letters HMS by Home Marketing Specialists, Inc. ("Specialists") in connection with real estate brokerage services constitutes a false designation of origin in violation of the Lanham Trademark Act, 15 U.S.C. § 1125(a); an unfair trade practice under the Michigan Consumer Protection Act, Mich.Comp.Laws Ann. §§ 445.901—.922 (West 1989); and unfair competition, service mark infringement, and dilution under the common law of Michigan. Homeowners seeks injunctive relief and cancellation of Specialists' federally registered mark. Specialists denies that Homeowners is entitled to any equitable relief and counterclaims for infringement, requesting cancellation of Homeowners' federally registered mark containing the initials HMS. Upon motions for summary judgment, the District Court ruled in favor of Homeowners on all counts, dismissed Specialists' counterclaim, permanently enjoined Specialists' use of any mark containing HMS, and ordered the cancellation of Specialists' federally registered mark. Specialists then filed this appeal. Because we find that the District Court erred in determining that no issues of material fact existed, we REVERSE and REMAND.

## I. BACKGROUND OF DISPUTE

Plaintiff-appellee Homeowners is a nationwide company that sells a variety of products and services to thousands of real estate brokers in over forty states. Homeowners' predecessor in title, Homeowners' Marketing Services, Inc. ("Services"), was formed in Florida in 1980. By 1982 Services was providing its services in other states including Michigan, using the mark shown below.

### Figure 1

This mark was apparently abandoned by Homeowners although the record provides

no information regarding the time of such abandonment. In early 1987, Services designed the HMS-roof design service mark shown below.

### Figure 2

This new mark was first used nationally and in Michigan beginning in July 1987 and continues to the present. In 1988, Homeowners was formed and in July 1988 the service marks belonging to Services were assigned to Homeowners; this assignment was recorded with the U.S. Patent and Trademark Office. In addition to these marks incorporating the initials HMS with a design, Homeowners claims that Services, and then Homeowners, also used the initials HMS alone as a service mark.

Defendant-appellant Specialists is a licensed real estate broker providing real estate brokerage services on a non-commission, flat-fee basis to the general public. Although Specialists competes directly with Homeowners' customers, who are commissioned real estate brokers, Specialists' primary customers are individual home sellers. Specialists was incorporated in Michigan in 1986 and continues to do virtually 100% of its business in Michigan although it has plans to franchise its brokerage services in other states. Specialists uses the service mark shown below.

### Figure 3

Specialists claims that it has used this mark continuously since its inception in

March 1986. Specialists also uses the initials HMS alone as a mark.

Homeowners claims that at the end of July 1987, Homeowners' predecessor Services first learned of the existence of Specialists and of Specialists' use of the marks containing the initials HMS. Homeowners alleges that it investigated the matter and concluded that no confusion was likely. Shortly thereafter, perhaps coincidentally, both Homeowners and Specialists filed applications for federal registration of their respective HMS-roof design service marks. Specialists' application was filed in the U.S. Patent and Trademark Office ("Office") on September 14, 1987, while Homeowners' application was filed on September 17, 1987.

The Office notified Homeowners of a potential conflict with Specialists' pending registration. The examiner was concerned that section 2(d) of the Lanham Act would bar Homeowners' registration. Section 2(d) bars registration of a mark that

> so resembles a mark registered in the [Office] or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive....

15 U.S.C. § 1052(d). In response, Homeowners wrote a memorandum to the Office arguing that there was little likelihood of confusion for two reasons. First, the companies were in different businesses with substantial differences in the channels of trade, and second, the two HMS-roof design marks were very different in appearance. Apparently convinced that no confusion was likely, the Office allowed registration by both Specialists and Homeowners on July 26, 1988 and September 27, 1988, respectively.

However, Homeowners claims that in October 1988, it learned of several instances of actual confusion by its real estate broker customers. According to Homeowners, some of its customers saw newspaper advertisements for Specialists and mistakenly believed that Homeowners was sponsoring or was otherwise affiliated with Specialists.

According to Homeowners, the confusion was caused by the use of the initials HMS in Specialists' service mark.

Homeowners notified Specialists of the confusion and requested Specialists to cease and desist from using the initials HMS in a service mark. These requests were unavailing and, in April 1989, Homeowners brought this complaint. A bench trial was scheduled for June 1990. After extensive discovery both parties filed motions for summary judgment. The crux of Homeowners' claim is that Homeowners has priority of use of the service mark HMS and that the contemporaneous use of marks containing the initials HMS by Homeowners and Specialists, when applied to their respective services, is likely to cause confusion in the marketplace. Specialists denied infringing on Homeowners' service mark and argued, inter alia, that there is no likelihood of confusion between the parties' respective HMS-roof design service marks and, even if there was confusion caused by the parties' use of those two marks, Homeowners was infringing on Specialists' mark because Specialists first used an HMS-roof design mark and possesses a valid prior federal registration.

The District Court granted summary judgment in favor of Homeowners and denied Specialists' motion. We review the grant of summary judgment *de novo* and the denial of summary judgment for abuse of discretion. *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). The specific findings and rulings of the District Court are set out in the discussion below where appropriate.

## II. APPLICABLE LEGAL STANDARDS

In deciding the parties' motions, the District Court held that the Michigan statutory and common law counts involved the same dispositive questions as the federal Lanham Act count. This is a question of state law that the parties do not challenge on appeal. Therefore, we treat this holding

as correct.[1] As a result, our determination of whether the District Court properly decided the Lanham Act count will apply to the Michigan statutory and common law counts.

The District Court correctly stated the requirements necessary to make out a claim for infringement under 15 U.S.C. § 1125(a) as follows: (1) ownership of a specific service mark in connection with specific services; (2) continuous use of the service mark; (3) establishment of secondary meaning if the mark is descriptive; and (4) a likelihood of confusion amongst consumers due to the contemporaneous use of the parties' service marks in connection with the parties' respective services. The District Court held that Homeowners had satisfied these requirements and therefore was entitled to judgment as a matter of law. We find that the District Court erred in two respects. First, the court's determination of ownership of the relevant marks was improper, resulting in a potentially incorrect comparison of the parties' marks for purposes of determining whether a likelihood of confusion exists. Second, the court's likelihood of confusion analysis was insufficient. We express no opinion regarding the District Court's conclusions with respect to the other elements of the infringement claims.

## III. OWNERSHIP OF SERVICE MARKS

■ It is elementary that service mark ownership is not acquired by federal or state registration. Rather, ownership rights flow only from prior appropriation and actual use in the market. See 1 J. McCarthy, Trademarks and Unfair Competition, § 16:5, at 733 (2d ed. 1984). However, while registration of a service mark is not dispositive on the question, it is at least prima facie evidence of the registrant's ownership and exclusive right to use of a mark. 15 U.S.C. §§ 1057(b), 1115(a).

■ One difficulty of this case is deciding which marks are owned by whom, and which marks are to be compared for purposes of determining whether a likelihood of confusion exists. The parties both argue that the relevant comparison is between the two companies' HMS-roof design marks (Figures 2 and 3). The District Court agreed. However, the District Court failed to make a finding as to which party has ownership, through priority of continuous use, of an HMS-roof design mark.[2] Instead of making a finding on that question, the District Court found that Homeowners had ownership of the mark consisting solely of the initials HMS. This is not disputed by the parties. The problem arose in the next step of the District Court's analysis where the court held that "[t]he first party to use the mark HMS would logically have the right to use the mark HMS with a rooftop design.... Since [Homeowners] has shown prior and continuous use of the mark HMS, [Specialists] has no rights to the mark HMS with or without a rooftop design." We cannot agree that it is a question of logic whether

---

**1.** We note that this ruling is correct as applied to the Michigan Consumer Protection Act ("Act") claim and the claim of common law unfair competition. See Schreiber Mfg. Co. v. Saft America, Inc., 704 F.Supp. 759, 769 (E.D. Mich.1989) (likelihood of confusion standard applicable to claim under Act is same as that involved in federal trademark law); Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831, 833 (6th Cir.1983) (test under Michigan common law is the likelihood of confusion standard). However, the District Court appears to be incorrect with respect to Homeowners' claim of dilution. This type of infringement does not require a showing of confusion. See 3A R. Callmann, Unfair Competition, Trademarks & Monopolies § 21.11, at 33 (4th ed. 1983); 2 J. McCarthy, Trademarks and Unfair Competition § 24:13, at 212 (2d ed. 1984). The dilution doctrine appears to be recognized in Michigan. See Consolidated Cosmetics v. Neilson Chem. Co., 109 F.Supp. 300, 310 (E.D.Mich.1952).

**2.** Specialists claims that it began using its HMS-roof design mark by March 1986, while Homeowners doesn't allege using its HMS-roof design mark until July 1987. Since Specialists possesses a prior federal registration of an HMS-roof design mark, Homeowners has the burden of showing prior, continuous use of its HMS-roof design mark. The District Court found that a genuine dispute exists regarding which party actually had prior use of an HMS-roof design mark but then found that an answer to that question is not necessary for resolution of the case.

a party's ownership of a mark containing mere initials acts to convey ownership of marks consisting of those initials plus other designs. Instead, it is a question of fact and law.

Ownership of a mark confers both the right to use a particular mark and the right to prevent others from using the same or a confusingly similar mark. It is the second aspect of ownership, i.e., the right to prevent others from using a particular mark, that is at issue in this and virtually every infringement case. It is this aspect of ownership that the District Court conferred upon Homeowners without analysis, as a matter of "logic[ ]." However, ownership of the mark HMS includes the right to exclude others from using a mark, such as Specialists' HMS-roof design mark, only if use of the subsequent mark will lead to a likelihood of confusion with the mark HMS. Therefore, once the District Court found that Homeowners owned the mark HMS, Homeowners had the right to prevent Specialists from using a particular mark only if the court further found, by comparing Homeowners' mark HMS with Specialists' allegedly infringing mark(s), that a likelihood of confusion would be created in the marketplace. The District Court failed to undertake this analysis.

■ To summarize, the mark consisting of the initials HMS alone is the only relevant mark that was found to have been used by Homeowners prior to Specialists' use of its HMS and HMS-roof design marks. Homeowners argues that since it has ownership of a mark consisting of the initials HMS, such ownership extends to other marks containing those initials along with other words or designs. This is the argument accepted by the District Court without proper analysis. Homeowners cannot make out an infringement case against Specialists by showing ownership of one mark (the initials HMS alone) and a likelihood of confusion based on a comparison between a different mark (the HMS-roof design mark) and Specialists' marks.

■ On remand of Homeowners' claim, if Homeowners cannot show first use of an HMS-roof design mark, the proper comparison will be between Homeowners' HMS mark and Specialists' HMS and HMS roof design marks.[3] If Homeowners can show first use of an HMS-roof design mark, then a comparison of the parties' respective HMS-roof design marks will be proper.

## IV. LIKELIHOOD OF CONFUSION

■ Specialists contends that the District Court erred in finding that no genuine issues of material fact exist regarding whether use of the parties' respective marks creates a likelihood of confusion in the marketplace. We agree.

■ In assessing the likelihood of confusion, a court's concern is "the performance of the marks in the commercial context." *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1266 (6th Cir.1985). The appearance of the litigated marks side by side in the courtroom does not accurately portray actual market conditions. In addition to the sound or appearance of the marks, a host of other factors help to pierce the unreality of simple comparisons and reveal the operative facts of the real world. To assist in assessing actual market conditions this Court has identified a number of factors which should be examined. These include:

1. strength of the plaintiff's mark;
2. relatedness of the services;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care and sophistication;
7. intent of the defendant in selecting the mark;  and
8. likelihood of expansion of the product lines using the marks.

*See Shoney's*, 759 F.2d at 1264 (citing *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982)).

---

**3.** Of course, a comparison for purposes of deciding likelihood of confusion will not be necessary if the mark HMS is held to be descriptive and without secondary meaning.

■ These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely. They are also interrelated in effect. Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case. But a thorough and analytical treatment must nevertheless be attempted.[4] The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.

■ This Circuit considers the question of whether there is a likelihood of confusion a mixed question of fact and law. Factual findings must be made with respect to the likelihood of confusion factors set out above. However, the further determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988). Because this case is presented to us after a grant of summary judgment, our task is to determine whether the District Court correctly held that no genuine issues of material fact were presented regarding the likelihood of confusion factors.

■ To resist summary judgment in a case where the likelihood of confusion is the dispositive issue, a nonmoving party must establish, through pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, that there are genuine factual disputes concerning those of the *Frisch's* factors which may be material in the context of the specific case. In examining the record to determine whether a genuine issue of material fact exists, a court must review all evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### A. Strength of the Plaintiff's Mark

■ The strength of a mark is a determination of the mark's distinctiveness and degree of recognition in the marketplace. " 'A mark is strong if it is highly distinctive, i.e., if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both.' " *Shoney's*, 759 F.2d at 1264 (quoting 3A R. Callmann, *Unfair Competition, Trademarks & Monopolies*, § 20.43, at 345 (4th ed. 1983)). The stronger the mark, all else equal, the greater the likelihood of confusion.

The District Court found that Homeowners' mark was widely known in 48 states by thousands of member broker offices. In addition, Homeowners indicated that it spent over $7 million in advertising and promotion between 1981 and October 1989 in connection with its various marks containing the initials HMS. Finally, the District Court found the mark HMS to be an arbitrary mark and, therefore, inherently distinctive. As a result of these findings, the District Court held that Homeowners' mark HMS is "sufficiently strong and well established." Although the District Court was correct in relying on this type of information the court failed to consider other information which is also relevant to the strength-of-mark determination.

■ The District Court's finding that HMS was an arbitrary and inherently distinctive mark is only a first step in determining the strength of a mark in the marketplace.[5] HMS may indeed be arbitrary and hence inherently distinctive, yet have little customer recognition or "strength" in the market, or perhaps have high recognition which is limited to a particular product or market segment. *See, e.g., Fruit of the Loom, Inc. v. Fruit of the Earth, Inc.*, 3

---

4. In some cases it may be unnecessary to undertake an extended analysis to infer confusion, e.g., where there is no difference between the marks of directly competitive goods/services. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir.1979).

5. We intimate no opinion regarding the correctness of this or any other of the District Court's factual determinations regarding the *Frisch's* factors. We simply hold that genuine issues of fact were presented with respect to many of the factors, making summary judgment inappropriate.

U.S.P.Q.2d 1531, 1533–34 (T.M.T.A.B.1987) ("Fruit of the Loom" is distinctive, but fame is limited to the underwear field and does not extend to apparel generally); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980) ("Domino" is a strong mark only for sugar and related products). Outside of evidence of advertising budgets, which has an attenuated link to actual market recognition, Homeowners produced no evidence that consumers in the marketplace recognize HMS as a mark which brings Homeowners to mind. In addition, the fact that Homeowners deals strictly with real estate brokers suggests that any recognition that Homeowners' marks have may be limited to the narrow universe of real estate brokers and salespeople who purchase specialized commercial products from Homeowners.

▆▆▆▆▆▆ Specialists offered a research report dated April 25, 1989, which indicated numerous third-party registrations of the mark HMS, either alone or in conjunction with other words or designs, in the U.S. Patent and Trademark Office and in various states. These registrations included a number of real estate related firms. As stated in comment g to the Restatement of Torts § 729 (1938), "[t]he greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less is the likelihood of confusion. . . ." Indeed, courts have found extensive third-party uses of a trademark to substantially weaken the strength of a mark. *See, e.g., Amstar*, 615 F.2d at 259–60 (multiple uses of "Domino" discussed in finding mark weak outside of specific uses); *Empire Nat'l Bank v. Empire of America*, 559 F.Supp. 650, 655 (W.D.Mich. 1983) (multiple uses of "Empire" discussed in finding mark to be relatively weak); 3A R. Callmann, § 20.44. The District Court failed to consider the information proffered by Specialists, finding that "the exhibit is not probative of the facts it attempts to assert. Specifically, the exhibit fails to disclose prior, current, or continuous use of the various marks by the owners." It is true that merely showing the existence of

marks in the records of the Patent and Trademark Office will not materially affect the distinctiveness of another's mark which is actively used in commerce. In order to be accorded weight a defendant must show what actually happens in the marketplace. However, inspection of the data supplied by Specialists indicates that many of the marks are currently registered and believed to be currently in use. While more detailed information regarding the nature and extent of use by third-party users of HMS marks may be more persuasive than the information provided, the evidence offered by Specialists was certainly probative of the fact that marks consisting of or containing the initials HMS are used in the marketplace by others. Specialists' proffered evidence is relevant to the strength of Homeowners' mark(s) and should have been considered for this purpose.

### B. Relatedness of the Services

The District Court's complete findings with respect to relatedness are as follows:

> Both the plaintiff and defendant operate in the area of real estate brokerage. Plaintiff offers marketing and advertising support services for real estate brokers. Defendant renders real estate brokerage services on a non-commission or flat fee basis. Plaintiff's customers are commission real estate brokers. As a result, defendant directly competes with plaintiff's customers.

The findings of the District Court are literally true, although the relatedness inquiry is not so superficial as the District Court's statement implies. Courts have recognized that there are basically three categories of cases: (1) direct competition of services, in which case confusion is likely if the marks are sufficiently similar; (2) services are somewhat related but not competitive, so that likelihood of confusion may or may not result depending on other factors; and (3) services are totally unrelated, in which case confusion is unlikely. *See Sleekcraft Boats*, 599 F.2d at 348. These categories are helpful in gauging how important relatedness may be in the ultimate likelihood of confusion determination.

■ It is clear that Homeowners' and Specialists' services are not similar nor are they directly competitive. The companies operate at different levels in the broad real estate industry and sell to two completely distinct sets of buyers. While Homeowners and Specialists are not competitors, neither can it be said that their services are totally unrelated since both companies participate in the real estate industry. However, services are "related" not because they coexist in the same broad industry, but are "related" if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company. "The question is, are the [services] related so that they are likely to be connected in the mind of a prospective purchaser?" *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d 149, 159 (9th Cir.), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963); *Wynn Oil,* 839 F.2d at 1187 (relatedness exists where goods and services are similar enough that a consumer could "easily assume" that they were offered by same source). The District Court did not adequately consider this aspect of "relatedness," which is the important inquiry in the likelihood of confusion determination.

### C. Similarity of the Marks

■ The District Court found that "[t]he marks of both parties are similar. Both parties use the letters HMS. Both parties also use the letters HMS with a rooftop design." As with the District Court's findings with respect to relatedness, we do not disagree with the literal findings made by the court although those findings are not particularly helpful to a proper analysis. In *Wynn Oil* this Court stated that, in evaluating similarity of marks, " '[i]t is axiomatic in trademark law that "side-by-side" comparison is not the test.' " 839 F.2d at 1187 (quoting *Levi Strauss & Co. v. Blue Bell, Inc.,* 632 F.2d 817, 822 (9th Cir.1980)). Instead, the marks must be viewed in their entirety and in context. "[A] court must determine, in the light of what occurs in the marketplace,

whether the mark 'will be confusing to the public when singly presented.' " *Id.* at 1187 (quoting *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 941 (10th Cir.1983)). It is the overall impression of the mark, not an individual feature, that counts. *See Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1165 (11th Cir.1982).

■ While it is certainly true that two marks consisting solely of the letters HMS could be very similar in appearance, confusion does not necessarily follow. Homeowners itself has argued to the U.S. Patent and Trademark Office that "the stylized lettering for these letters in each of the two marks is so different" that no confusion should be likely. More importantly, Homeowners seeks to enjoin Specialists from using not only the letters HMS but also Specialists' service mark consisting of those letters, a roof design, and the words "HOME MARKETING SPECIALISTS." It is this mark in its entirety, and how it is actually seen in the marketplace, that must also be compared to the relevant Homeowners mark. Although it is not conclusive, it is worth noting that Homeowners itself, when seeking federal registration of its HMS-roof design mark, argued that "the [parties' respective HMS-roof design] marks, when considered in their entireties, create substantially different commercial impressions, which would be readily distinguished in the market place."

### D. Evidence of Actual Confusion

■ The District Court found that "[t]he only evidence of actual confusion presented to the Court has been provided by plaintiff. According to plaintiff, in 1988 it learned of actual confusion between the two [HMS-roof design] marks in Michigan." The evidence referred to by the District Court consisted of the deposition testimony of Homeowners' national director of marketing who testified to "serious instances" of confusion by several real estate broker customers. The only evidence offered by Homeowners to support this testimony was one letter from a real estate broker.

Even though evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion it does not follow that any type or quantum of such evidence is entitled to significant weight in the determination. Where the parties have been doing business in the same area for some time and where they have advertised extensively, isolated instances of actual confusion are not conclusive or entitled to great weight in the determination. *See, e.g., Sun Banks, Inc. v. Sun Fed. Savs. & Loan*, 651 F.2d 311, 319 (5th Cir.1981) (nineteen reports over three years held insufficient); *Amstar*, 615 F.2d at 263 (three instances over fifteen years held insufficient); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 506 & n. 15 (5th Cir.), *cert. denied*, 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979) (three instances of confusion insufficient). Indeed, the existence of only a handful of instances of actual confusion after a significant time or a significant degree of concurrent sales under the respective marks may even lead to an inference that no likelihood of confusion exists. *See Amstar*, 615 F.2d at 263.

Perhaps as important as the number of instances of confusion are the kinds of persons confused and degree of confusion. "Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight," *Safeway Stores*, 675 F.2d at 1167, while chronic mistakes and serious confusion of actual customers are worthy of greater weight.

### E. Marketing Channels Used

The District Court made no finding with respect to this element, stating that "[w]ith respect to marketing channels used, ... little evidence exists to allow this Court to adequately consider [this factor]." This factor, also termed "channels of trade" by some courts, consists of considerations of how and to whom the respective goods or services of the parties are sold. This factor is very significant in illuminating what actually happens in the marketplace and, where other factors are not particularly probative, is of special importance.

Obviously, dissimilarities between the predominant customers of a plaintiff's and defendant's goods or services lessens the possibility of confusion, mistake, or deception. Likewise if the services of one party are sold through different marketing media in a different marketing context than those of another seller, the likelihood that either group of buyers will be confused by similar service marks is much lower than if both parties sell their services through the same channels of trade. As one commentator has noted:

If one mark user sells exclusively at retail and the other exclusively to commercial buyers, then there may be little likelihood of confusion since no one buyer ever buys both products. For example, if one user sells food only at retail to consumers and the other sells only to commercial food brokers (and the product never reaches consumers under the mark), then there is no one buyer who will be faced with both products, and hence no confusion.

2 J. McCarthy, *Trademarks and Unfair Competition* § 24:7, at 190–91 (2d ed. 1984) (footnote omitted). *See also American Cyanamid Co. v. S.C. Johnson & Son, Inc.*, 729 F.Supp. 1018 (D.N.J.1989) (no likelihood of confusion between similar insecticides sold under distinguishable marks where one is sold primarily through industrial channels and the other through retail channels); *Oxford Indus. v. JBJ Fabrics, Inc.*, 6 U.S.P.Q.2d 1756, 1988 WL 9959 (S.D.N.Y.1988) (Plaintiff sells JBJ garments through retail channels to consumers while defendant, a fabric printer doing business under the JBJ mark, sells its fabric to garment manufacturers. The parties' products are marketed through distinctly different channels of commerce; no likelihood of confusion found.); *In re Shipp*, 4 U.S.P.Q.2d 1174 (T.M.T.A.B.1987) (Applicant's use of PURITAN for laundry and dry cleaning services rendered to consumers will not likely cause confusion with cited trademark PURITAN for commercial dry cleaning filters sold only to dry cleaning professionals. It is unlikely that applicant's customers would ever encounter any of the commercial goods sold under the

cited mark.). In this case the record contains ample evidence as to whom the parties' customers are and the marketing context in which their services are sold. The District Court failed to adequately analyze this factor.

Homeowners' services are sold exclusively to real estate brokers and its marketing efforts are targeted to that commercial group. Those efforts consist primarily of telemarketing, production of special brochures and newsletters for brokers, and attending real estate conventions. In contrast, Specialists' services are sold exclusively to owners of real estate and its marketing efforts are targeted to individuals who desire assistance in selling their property. Specialists' marketing consists primarily of advertisements in the real estate section of newspapers and direct mail advertisements to property owners. It is apparent that Homeowners and Specialists market and sell their services to two different sets of potential customers. Further, it appears that there is little, if any, overlap in the media used to communicate with their respective target markets.

### F. Likely Degree of Purchaser Care/Sophistication

The District Court also declined to make a finding as to purchaser sophistication, simply stating that little evidence exists to allow adequate consideration of this element. As with the marketing channels factor, we find more than enough information in the record to warrant a finding.

■■■ Generally, in assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution. However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases. When services are sold to such buyers, other things being equal, there is less likelihood of confusion. *See* 3A R. Callmann, §§ 20.11—.12; 2 J. McCarthy, §§ 23:28—:29. Although it has been ob-

served that the expertise of purchasers does not necessarily preclude a finding that confusion is likely, *see Communications Satellite Corp. v. Comcet, Inc.,* 429 F.2d 1245, 1252 (4th Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970), in this case it appears that the buyers of both Homeowners' and Specialists' services are likely to exercise a high degree of care.

■■■ Homeowners sells its services strictly to real estate brokers—sophisticated commercial buyers who are purchasing business services or services for resale in the course of their business. When the relevant buyer class is composed of such professional purchasers the likelihood of confusion is lower. That is, "while two marks might be sufficiently similar to confuse an ordinary consumer, a professional buyer or an expert in the field may be more knowledgeable and will not be confused." 2 J. McCarthy, § 23:29, at 135. Specialists is also selling a business service, albeit to non-business customers. However, because selling one's property is likely the most significant commercial transaction ever undertaken for most people, Specialists' customers are likely to carefully select the provider of sales services. *See Magnaflux Corp. v. Sonoflux Corp.,* 43 C.C.P.A. 868, 231 F.2d 669, 671 (1956) (confusion is less likely where goods are expensive and are purchased after careful consideration than when they are purchased casually). Because of the significance of the services sold by Specialists and the sophistication of Homeowners' customers, this factor may be material in determining whether a likelihood of confusion exists.

### G. Intent of Defendant in Selecting Mark

■■■ The District Court also declined to make a finding on the issue of Specialists' intent in selecting its marks. If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity. *Wynn Oil,* 839 F.2d at 1189.

### H. Likelihood of Expansion of Product Lines

██ The District Court's finding on this factor consists of the following: "Finally, plaintiff has submitted that a likelihood of expansion by defendant does exist. According to plaintiff, defendant plans to establish franchises in Florida, Georgia and 22 other states, but at present, defendant has no franchises." Although plans for geographic expansion by one or both parties may be relevant, the inquiry contemplated under this factor is not so limited. The more important question in this case, which involves services which are not competitive or closely related, concerns expansion in the types of products or services offered by the parties. Inasmuch as a trademark owner is afforded greater protection against services that directly compete or are in the same channels of trade, a "strong possibility" that either party will expand his business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing. *See* Restatement of Torts § 731(b) & comment c (1938). The District Court did not address this significant question.

### V. SPECIALISTS' MOTION FOR SUMMARY JUDGMENT

Specialists also appeals the District Court's denial of its motion for summary judgment. Specialists argues that if there is a likelihood of confusion between the HMS-roof design marks, then Homeowners is the infringing party since Specialists was the first to use such a mark. We agree with the District Court that there is an issue of fact as to which party actually first used an HMS-roof design mark in commerce. *See* footnote 2 *supra.* This factual question alone makes summary judgment for Specialists inappropriate.

### VI. CONCLUSION

The District Court's mistaken conclusion that Homeowners' ownership of the mark HMS necessarily included the right to an HMS-roof design mark was the predicate for comparing Homeowners' HMS-roof de-

sign mark with Specialists' HMS-roof design mark. This comparison was incorrect given the limited findings made by the District Court. In addition, our review of the record convinces us that genuine issues of material fact were raised with respect to whether a likelihood of confusion exists in the marketplace due to the parties' use of their respective marks.

Therefore, we REVERSE the District Court's grant of summary judgment in favor of Homeowners on the Lanham Act, section 1125(a) claim. Accordingly, we also REVERSE the grant of summary judgment against Specialists on the Michigan Consumer Protection Act and Michigan common law claims and VACATE both the injunction entered against Specialists and the order cancelling Specialists' federal registration number for the HMS-roof design service mark. Finally, we REMAND for further proceedings not inconsistent with this opinion.