NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0741n.06

No. 12-1760

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Aug 09, 2013*
DEBORAH S. HUNT, Clerk

LUCKY'S DETROIT, LLC,  )
                        )
    Plaintiff-Appellant,  )
                        )  ON APPEAL FROM THE UNITED
v.                      )  STATES DISTRICT COURT FOR THE
                        )  EASTERN DISTRICT OF MICHIGAN
DOUBLE L, INC.,         )
                        )
    Defendant-Appellee.  )

**BEFORE:  COOK, WHITE, and DONALD, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge**.  Lucky's Detroit, LLC (LD) appeals the district court's grant of a permanent injunction in favor of Double L, Inc. (Double L), enjoining LD from using the  names "Lucky's" or "Lucky's Pub and Grille" in connection with its restaurants.  We AFFIRM.

## I.  BACKGROUND

Plaintiff-Appellant LD and Defendant-Appellee Double L both operate restaurants in Michigan.  Double L operates eight restaurants, including five under the name "Lucky's Steak House," located in Imlay City, Davison, Fenton, Clio, and Bay City.  Double L began using the marks "Lucky's" and "Lucky's Steak House" in October 1998.  It registered the marks with the state of Michigan on November 16, 1999, and with the United States Patent and Trademark Office (USPTO) in connection with "restaurant services" on June 12, 2001.  Lucky Vasilakis owns the stock and is an officer of Double L, which owns 100% of three of the Lucky's Steak Houses, and

33% and 50% of the other two Lucky's Steak Houses. Vasilakis oversees the daily operations of the restaurants, including signage, the appearance and content of menus, maintenance of the website, and advertising, and testified that Double L had a "verbal agreement" with each of the Lucky's Steak House restaurants permitting them to use the marks. Vasilakis also testified that with his permission, the staff at the restaurants refer to them as "Lucky's."

LD operates three pub-style establishments under the name "Lucky's Pub & Grille," two in downtown Detroit, which have been in business since sometime in 2008 and October 2009, and a third in Southfield, which opened in May 2010 during the pendency of this action. All three restaurants are owned and managed by Waleed Mona.

In October 2009, after customers allegedly expressed confusion regarding whether Vasilakis owned Lucky's Pub and Grille, Vasilakis sent a letter to Mona requesting that LD cease and desist its use of the names "Lucky's Pub and Grille" and "Lucky's." LD refused and filed this action seeking a declaratory judgment of non-infringement. The complaint also alleges lack of confusing similarity, fraud on the USPTO, fraud on the Michigan Corporation and Securities Department, and abandonment. Double L filed an answer and counterclaim, alleging federal trademark infringement, a violation of Lanham Act § 43(a), trademark infringement under Michigan Compiled Laws § 429.42 and Michigan common law, and unfair competition under Michigan common law. LD's answer to the counterclaim asserts affirmative defenses of unclean hands, estoppel, and abandonment.

After the court ruled on the parties' partial motions to dismiss, only LD's claims for declaration of non-infringement and abandonment and Double L's counterclaims for federal trademark infringement and violation of Lanham Act § 43(a) remained. Following discovery, both

parties moved for summary judgment. The district court granted Double L's motion as to liability

and enjoined LD from using the marks "Lucky's" or "Lucky's Pub and Grille." LD timely appealed.

## II. STANDARD OF REVIEW

In our review of a district court's grant of a permanent injunction, "[f]actual findings are

reviewed under the clearly erroneous standard, legal conclusions are reviewed de novo, and the scope

of injunctive relief is reviewed for an abuse of discretion." *Sec'y of Labor, U.S. Dep't of Labor v.*

*3Re.com, Inc.*, 317 F.3d 534, 537 (6th Cir. 2003) (internal quotation marks omitted). A court may

issue a permanent injunction when the party requesting the injunction demonstrates that: (1) it will

suffer an irreparable injury absent an injunction; (2) legal remedies, such as money damages, provide

inadequate compensation; (3) the balance of hardships warrants an injunction; and (4) the public

interest would not be disserved by an injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388,

391 (2006). In trademark infringement cases, a likelihood of confusion or possible risk to the

requesting party's reputation satisfies the irreparable injury requirement. *Wynn Oil Co. v. Am. Way*

*Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991).

## III. ANALYSIS

The central question is whether Double L's use of "Lucky's" or "Lucky's Pub & Grille" is

likely to cause confusion among patrons regarding the ownership of the restaurants. *See AutoZone,*

*Inc. v. Tandy Corp.*, 373 F.3d 786, 791–92 (6th Cir. 2004) (citing *Daddy's Junky Music Stores, Inc.*

*v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)); *see also* 15 U.S.C.

§ 1114(1)(a). LD challenges the district court's determination that there is a likelihood of confusion

and reasserts the affirmative defenses of estoppel and unclean hands.

**A. Likelihood of Confusion**

In this circuit, we weigh eight factors, known as the *Frisch* factors, to determine whether there is a likelihood of confusion: (1) the strength of Double L's marks, (2) the relatedness of the restaurants, (3) the similarity of the marks, (4) the evidence of actual confusion, (5) the marketing channels used, (6) the likely degree of purchaser care and sophistication, (7) LD's intent in selecting its mark; and (8) the likelihood of expansion of the restaurants using the marks. *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). Under this test, the "ultimate question" is "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). The district court concluded that all of the *Frisch* factors weighed in favor of Double L, except LD's intent in selecting its mark, which the court considered neutral.

**1. Strength of the Marks**

To evaluate the strength of a mark, we consider two separate components: (1) the conceptual strength, or placement of the mark on the spectrum of marks, which encapsulates the question of inherent distinctiveness; and (2) the commercial strength, or marketplace recognition value of the mark. *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 419 (6th Cir. 2012) (internal quotation marks omitted).

A mark's distinctiveness and resulting conceptual strength "depends partly upon which of four categories it occupies: generic, descriptive, suggestive, and fanciful or arbitrary." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631 (6th Cir. 2002) (internal quotation marks omitted).

A descriptive mark "specifically describes a characteristic or ingredient of an article," while an arbitrary mark "has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached, such as CAMEL cigarettes or APPLE computers." *Id.* (internal quotation marks and brackets omitted). "A descriptive mark, by itself, is not protectable." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 730 (6th Cir. 2012). However, a "merely descriptive term can, by acquiring a secondary meaning, *i.e.*, becoming distinctive of the applicant's goods, become a valid trademark." *Id.* (internal quotation marks and ellipses omitted); *see Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 364 (6th Cir. 1984) (descriptive mark becomes distinctive through advertising and reputation).

LD first challenges the district court's finding that Double L's marks are arbitrary—the strongest type of mark—based on its determination that although "Lucky's" is not normally related to restaurants, it has become associated with Double L's restaurants through use and advertisement. LD stresses that Double L's restaurants are named after (Lucky) Vasilakis. Typically, marks utilizing personal names are considered descriptive, "and as such [are] generally weak unless there is evidence of secondary meaning." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 217 (2d Cir. 2003). As the district court recognized, however, secondary meaning is required only if the public *perceives* the mark to be a personal name. *See Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054 (6th Cir. 1999) (although the mark "CARMAX" was purportedly a combination of the first names Carson and Max, the public would not perceive it to be a combination of personal names when used as a mark to sell used cars); *see also* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 13:2 (4th ed. 1998). Although Lucky is, in this case, a

personal name, it is also an adjective that means "having or marked by good luck," Random House

Webster's College Dictionary (2d ed. 1997). The district court did not err in determining that this

is the definition that consumers likely associate with the marks.

Additionally, Double L's marks have acquired "incontestable" status. If a mark "has been

in continuous use for five consecutive years subsequent to the date of . . . registration and is still used

in commerce," the mark is considered "incontestable." *See* 15 U.S.C. § 1065. An incontestable

mark is accorded one of two presumptions under the Lanham Act: "(1) that [the] registered

trademark is not merely descriptive or generic; or (2) that if descriptive, the mark is accorded

secondary meaning." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001), *cited

with approval in Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513–14 (6th Cir.

2007); *see also* 15 U.S.C. § 1115(a) (providing that registration on the principal register "shall be

prima facie evidence of the validity of the registered mark"). Because of these presumptions, LD

cannot defend against this infringement action by claiming that the marks are "merely descriptive"

and therefore undeserving of protection. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S.

189, 196 (1985) ("The language of the Lanham Act [] refutes any conclusion that an incontestable

mark may be challenged as merely descriptive."); *Daddy's*, 109 F.3d at 282; *Wynn Oil Co. v.

Thomas*, 839 F.2d 1183, 1187 (6th Cir. 1988).

LD argues that, notwithstanding the marks' incontestable status, the district court erred in

assessing the strength of the marks by ignoring evidence of a "crowded market." LD correctly relies

on our decision in *Therma-Scan* for the proposition that a court must weigh the conceptual *and*

commercial strength of a mark, even where it determines that a mark is valid and incontestable. *See* 295 F.3d at 632 ("Even where a trademark is incontestable and 'worthy of full protection,' the significance of its presumed strength will depend upon its recognition among members of the public."); *Maker's*, 679 F.3d at 420. Here, the district court in fact considered, but rejected, LD's evidence regarding a "crowded market." LD submitted a search of online listings for restaurants using the term "Lucky's," "Lucky," and "Luckies," a USPTO record listing other marks that use the term "Lucky's" in connection with restaurant services, and an affidavit from Michael Gebus, the owner of "Lucky's Pub" in Fowlerville, Michigan, in which he attests that his restaurant has been open since 1994, four years before Lucky's Steak House opened. We have recognized, however, that "merely showing the existence of marks in the records of the [USPTO] will not materially affect the distinctiveness of another's mark which is actively used in commerce." *Homeowners*, 931 F.2d at 1108. In order for market conditions to carry weight, a defendant must show "what actually happens in the marketplace." *Id.* Although some of the businesses listed in LD's internet results are located in Michigan, many appear to be in other markets. "A mark might be weak in the national market, but might still be strong in the senior user's geographical and product area and thus deserving of protection." *Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 967 (6th Cir. 1987). Further, LD presented no evidence that the businesses listed online are actively using the marks in operating restaurants. Evidence of numerous third-party registrations is especially relevant if the registrations are "current and in current use . . . [in] the very industry at issue." *Daddy's*, 109 F.3d at 281. The only business shown to be using the name "Lucky's" on a current basis in connection with a

restaurant is Lucky's Pub. This is insufficient to meet the required evidentiary showing of *widespread* third-party use.

Further, the district court credited Vasilakis's deposition testimony that Lucky's Steak House has strong public recognition in southeast Michigan, considering the distance that customers travel to patronize it; its selection as best steakhouse, best seafood, and best restaurant in Bay City for at least the past two years; that customers contacted Vasilakis to open new Lucky's Steak House restaurants in their areas; and Double L's advertising. The court also noted that LD provided no evidence to refute Double L's assertion of customer recognition, focusing only on third-party use. Thus, the presumed strength of the arbitrary, incontestable marks is bolstered by the public's recognition of the marks as specific to Double L's restaurants, and the district court's conclusion that the marks are both conceptually and commercially strong is not in error.

### 2. Relatedness of the Goods and Services

This court considers three categories when determining the relatedness of the goods or services:

> First, if the parties compete directly by offering their goods or services, confusion is likely if the marks are sufficiently similar; second, if the goods or services are somewhat related but not competitive, the likelihood of confusion will turn on other factors; third, if the goods or services are totally unrelated, confusion is unlikely.

*Daddy's*, 109 F.3d at 282. LD argues that the restaurants differ in location and ambiance, and therefore are not competitive. However, the restaurants' food, beverages, and pricing are similar—Lucky's Pub and Grille's menu even includes a section titled "Lucky's Famous Steaks"—and both restaurants have bar areas and televisions playing sports events. In addition, Lucky's Pub

and Grille's expansion into the Detroit suburb of Southfield in 2010 undermines LD's claim that it caters to "urban areas," while Lucky's Steak House caters to suburban and rural areas. Thus, the district court's determination on relatedness is not in error.

### 3. Similarity of the Marks

In assessing the similarity of the marks, "[a] court must determine, in the light of what occurs in the marketplace, whether the mark 'will be confusing to the public when singly presented.'" *Homeowners*, 931 F.2d at 1109 (quoting *Wynn Oil*, 839 F.2d at 1187). LD asserts that because the word "Lucky's" is commonly used by restaurants, we must look at the remaining differences in the names (i.e., "Pub and Grille" versus "Steak House") to assess similarity. However, this court has held that "the marks must be viewed in their entirety and in context." *Id.* When reviewed in this context, the parties' marks have many similarities, including the use of all capital letters, bold font, and an apostrophe. In addition, both parties use the word "Lucky's" alone in various contexts, which is one of the marks at issue. *See Daddy's*, 109 F.3d at 283–84 (finding "Daddy's Junky Music Store" and "Big Daddy's Family Music Center" similar because both parties often advertised using only the word "Daddy's" and because "Daddy's" was not simply a component of the mark, but the mark itself). Accordingly, the district court did not err in determining that the marks were similar.

### 4. Evidence of Actual Confusion

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Daddy's*, 109 F.3d at 284 (quoting *Wynn Oil*, 839 F.2d at 1188). Here, the district court credited Vasilakis's deposition testimony that customers expressed confusion regarding whether he owns the

"Lucky's in Detroit" and were concerned when a newspaper covered a shooting that had occurred at a Lucky's Pub and Grille as "Man killed outside Lucky's in Detroit."[1]

The record reveals limited details about actual customer confusion. We do not require a sworn statement or affidavit from a customer who claims to be confused, *Innovation Ventures*, 694 F.3d at 738; however, a party must provide details about the confusion. *See Leelanau*, 502 F.3d at 519 (finding no actual confusion where the stories of confusion "lack [] details" and were "few in number"). Vasilakis's testimony explains why he believes there was confusion, but does not provide a clear picture of how many instances of confusion occurred or evidence regarding the confused customers' identities.

Although Double L's evidence of actual confusion is not particularly strong, "a lack of such evidence is rarely significant." *Daddy's*, 109 F.3d at 284 (citation and internal quotation marks omitted). Moreover, as the district court noted, even limited evidence of confusion gains significance where the establishments have only competed for a short time, as is the case here. Thus, the district court did not err in determining that actual confusion occurred, although we accord this factor only limited weight.

---

[1]LD asserts that the customers' statements are hearsay and thus are "not entitled to any weight." The customer comments, however, "were not relied on to show the content of the conversations, but rather were introduced merely to show that the conversations occurred and the state of mind of the declarants." *Innovation Ventures*, 694 F.3d at 738 (citing Fed. R. Evid. 803(3)). In such a case, the statements are admissible as a hearsay exception. *See id.*; *see also* 4 J. Thomas McCarthy, 4 McCarthy on Trademark and Unfair Competition § 23:15 (4th ed. 1998).

### 5. Marketing Channels Used

Assessing whether the marketing channels used are different "consists of considerations of how and to whom the respective goods or services of the parties are sold." *Homeowners*, 931 F.2d at 1110. The district court found that an assessment of the advertising channels used "weigh[ed] slightly in favor of [Double L]" largely because of a commonality between the customers. LD argues that the marketing channels used by the parties are different because LD uses the radio, flyers, and word-of-mouth, while Double L uses road-side billboards and word-of-mouth. Because the marketing channels are similar in some respects and dissimilar in others, the district court did not err in determining that this factor marginally favors Double L. However, "[t]he weight of this factor will not add much to a finding of infringement because of the equivocal nature of the district court's factual findings." *Maker's*, 679 F.3d at 423.

### 6. Likely Degree of Purchaser Care

The district court determined that "[p]urchasing food at the parties' restaurant[s] is not generally an expensive or unusual experience," and thus concluded that, under the standard of a buyer exercising ordinary caution, the "level of customer care was low." LD concedes on appeal that the ordinary care standard is the default for this factor, but asserts that "consumers are conditioned to look to other non-common portions of a mark to differentiate goods and services, e.g., 'Pub and Grille' versus 'Steakhouse' coupled with a beer stein logo." Appellant's Br. at 33. We have explained that the purchaser care factor is often dependent on its relationship with the other seven factors, particularly the similarity of the marks. *See Leelanau*, 502 F.3d at 520; *Daddy's*, 109

F.3d at 285. Here, where the marks are relatively similar and an ordinary care standard applies, the district court did not err in determining that this factor weighs in favor of Double L.

### 7. Intent in Selecting the Mark

The district court found that there was no evidence, circumstantial or otherwise, that LD purposefully copied Double L's mark. Double L argues that LD's continued expansion under the name "Lucky's Pub and Grille" after the inception of this suit indicates an intent to cause confusion in the marketplace. However, expansion of an already-existing business is distinct from selecting a mark with intent to infringe, and Double L provides no case law to support its position. Moreover, Double L offers no evidence, direct or circumstantial, that LD initially selected the mark to attract Double L's customers. *See AutoZone*, 373 F.3d at 800 (no intent where there is no evidence that the junior user selected the mark to steal customers from the senior user). Because "[i]ntent is an issue whose resolution may benefit only the cause of the senior user, not of an alleged infringer," the district court correctly determined that this factor was neutral. *Leelanau*, 502 F.3d at 520 (internal quotation marks omitted).

### 8. Likelihood of Expansion of the Product Lines Using the Mark

"[A] strong possibility that either party will expand [its] business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Homeowners*, 931 F.2d at 1112 (internal quotation marks omitted). Here, there is more than a likelihood of expansion; there is LD's actual expansion into the Detroit suburb of Southfield during the course of this litigation. Moreover, both Vasilakis and Mona testified that they planned

to open more restaurants in new locations. Accordingly, we find that the district court did not err in weighing the likelihood of expansion factor in favor of Double L.

### 9. Balancing

This court reviews de novo the legal question whether the district court's factual findings under *Frisch* support a likelihood of confusion. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 764 (6th Cir. 2005). Because the district court's factual findings were not clearly erroneous, we adopt them and balance them de novo. *Maker's*, 679 F.3d at 423.

The balance of the factors supports the district court's determination that there is a likelihood of confusion. All the non-neutral factors weigh, in greater or lesser degrees, in favor of Double L, including the most important *Frisch* factors, similarity and strength of the marks. *See Maker's*, 679 F.3d at 424. In considering the touchstone question "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way," *Homeowners*, 931 F.2d at 1107, we conclude that there is sufficient evidence that customers will be confused by both parties' use of the marks, and thus Double L made a sufficient showing that it would suffer irreparable harm if LD continues to use the mark.

### B. Affirmative Defenses

LD argues that Double L is barred from claiming infringement because of the doctrines of estoppel and unclean hands.[2] *See* 15 U.S.C.A. § 1115(b)(9).

---

[2]LD has abandoned its third affirmative defense, abandonment, on appeal.

### 1. Estoppel

In its opposition to the initial denial of its registration by the USPTO, Double L argued that:

> [A]ll other marks incorporating the words "LUCKY" or "LUCK" for similar services should be afforded a weak degree of protection because the Trademark Office has registered the following marks incorporating the words "LUCKY" or "LUCK." . . . When there are several registrations incorporating the words "LUCKY" or "LUCK," each mark and registrant should be granted a narrow scope of exclusivity confined to the use of the identified mark on similar services.

Double L USPTO Filing, PageID 761–62. LD asserts that Double L acknowledged the limitations of the marks when applying to the USPTO, and that such acknowledgments bar Double L from arguing for a broader application of the marks now. The district court concluded that LD failed to show how counsel's representations to the USPTO are relevant and that, in any event, equitable estoppel requires detrimental reliance, and LD is unable to demonstrate how any reliance resulted in injury. On appeal, LD argues that there are doctrines of estoppel that do not require reliance on the part of the claimant and asserts that one such doctrine, "prosecution history estoppel," also called "file wrapper estoppel," is applicable to the current case.

As an initial matter, "prosecution history estoppel" has traditionally been applied in the patent, not trademark, context. *See* 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 32:111 (4th ed. 1998). Nonetheless, courts have, without specifically referring to "prosecution history estoppel," expressed varying degrees of unwillingness to accept an argument that is in direct conflict with a trademark registrant's prior position before the USPTO. *See, e.g.*, *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 476 (3d Cir. 2005) (considering a registrant's prior representations to the USPTO in its likelihood of confusion analysis without

determining whether the remarks constituted "judicial estoppel, an admission, waiver, or simply hoisting [the plaintiff] by its own petard"); *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 94 (4th Cir. 1997) (considering a characterization of a registrant's protection that was inconsistent with its prior representations to the USPTO as a factor in the likelihood of confusion analysis, but not as a complete defense to infringement); *see also* 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 32.111 (4th ed. 1998).

Even assuming prosecution history estoppel (or some lesser standard such as waiver) applies, LD's estoppel argument fails. Double L's representation before the USPTO is not in conflict with its current position. Double L asserted in its USPTO filing that "[w]hen there are several registrations incorporating the words "LUCKY" or "LUCK," each mark and registrant should be granted a narrow scope of exclusivity *confined to the use of the identified mark on similar services*." Double L USPTO Filing, PageID 761–62, (emphasis added). Here, Lucky's Pub and Grille provides substantially similar services as Lucky's Steak House. Double L also introduced evidence that LD uses the *identical* mark "Lucky's"—without modifying the mark to include "Pub and Grille"—on its receipts, menu, and website. Because Double L's position does not contradict its assertion before the USPTO, LD's estoppel argument fails.

### 2. Unclean Hands

LD further argues that Double L should be barred from arguing infringement because of the doctrine of "unclean hands," based on its representations to the USPTO and the relief sought at the district court. "The concept of unclean hands may be employed by a court to deny injunctive relief

where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party."

*Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995) (citation omitted). LD has provided no evidence that Double L is guilty of conduct involving fraud, deceit, unconscionability, or bad faith or that Double L made erroneous representations to the USPTO. Thus, the district court correctly rejected LD's unclean hands defense.

## IV. CONCLUSION

Based on the foregoing reasoning, we affirm the district court's grant of a permanent injunction.