RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0110p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

AWGI, LLC; ATLAS LOGISTICS, INC.; ATLAS VAN LINES, INC.,

  *Plaintiffs-Appellees*,

  *v.*

ATLAS TRUCKING COMPANY, LLC; ATLAS LOGISTICS, LLC; EATON STEEL BAR COMPANY, INC.,

  *Defendants-Appellants*.

> No. 20-1726

─────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-12131—Sean F. Cox, District Judge.

Argued:  April 22, 2021

Decided and Filed:  May 18, 2021

Before:  GIBBONS, COOK, and LARSEN, Circuit Judges.

─────────────

**COUNSEL**

**ARGUED:**  Steven Susser, CARLSON, GASKEY & OLDS, P.C., Birmingham, Michigan, for Appellants.  John Gabrielides, BARNES & THORNBURG LLP, Chicago, Illinois, for Appellees.  **ON BRIEF:**  Steven Susser, CARLSON, GASKEY & OLDS, P.C., Birmingham, Michigan, for Appellants.  John Gabrielides, Genevieve Charlton, Valerie Galassini, BARNES & THORNBURG LLP, Chicago, Illinois, Mark F. Warzecha, WIDERMAN MALEK, PL, Melbourne, Florida, for Appellees.

—————————————

**OPINION**

—————————————

COOK, Circuit Judge.   Plaintiff AWGI (Atlas Movers) claims that defendant Eaton Steel's companies, Atlas Trucking and Atlas Logistics, infringe on its "Atlas" brand marks. Eaton denies infringing and affirmatively asserts ownership of the Atlas Logistics mark.  After a bench trial, the court found for Atlas Movers and against Eaton.  We AFFIRM.

**I.**

Atlas Movers owns the "Atlas" mark and federally registered it for "freight forwarding services and transportation of household goods of others."  It first used "Atlas" in 1948 when it formed Atlas Van Lines, a company that provides transportation and logistics services, primarily moving household goods.   One of its divisions, Specialized Transportation Group, has transported general commodities since 1970.  STG provides logistics services for non-household goods shipments.

Over time, Atlas Movers focused more extensively on logistics services, forming Atlas Relocation Services, Inc. in 1995.  In 2007, Atlas Movers began marketing its service as "Atlas Logistics."  In keeping with this change, it renamed its logistics company Atlas Logistics, Inc. in 2015.  Atlas Logistics can ship, or arrange the shipment of, any kind of commodity.

Eaton, on the other hand, manufactures and distributes steel.  To better deliver its steel and metal products, Eaton created Atlas Trucking in 1999.  Over time, it expanded to ship goods other than steel and metal for companies in addition to its own.  It later developed Atlas Logistics in 2003 as an adjunct to Atlas Trucking.  Testimony confirms that when it did so, Eaton knew of Atlas Van Lines.

Atlas Movers eventually got wind of what Eaton was up to and sued in 2017 for infringement of its Atlas marks.  Eaton answered and counterclaimed that it owned the Atlas Logistics mark.  Following dueling motions for summary judgment, the case proceeded to a

bench trial that resulted in the court granting judgment in favor of Atlas Movers and against Eaton.  Eaton appeals.

## II.

"We review the district court's findings of fact for clear error and its conclusions of law de novo in an appeal from a judgment entered after a bench trial." *Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*, 906 F.3d 403, 406 (6th Cir. 2018).

## III.

"A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark 'is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (quoting *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 515 (6th Cir. 2007)); *see also* 15 U.S.C. § 1114(1).  Eaton disputes only the confusion prong.

To determine whether consumers are likely to be confused about the source of a mark, the court considers eight factors: (1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines or services. *Kibler v. Hall*, 843 F.3d 1068, 1073 (6th Cir. 2016).  This inquiry presents a mixed question of fact and law—it "has factual components (e.g., what evidence of confusion has been shown?) and legal components (e.g., what counts as cognizable confusion?)." *Sterling Jewelers, Inc. v. Artistry Ltd.*, 896 F.3d 752, 755 (6th Cir. 2018).

The trial court found that Eaton's use of "Atlas," alone or with other words such as "Atlas Trucking" and "Atlas Logistics," creates a likelihood of confusion with Atlas Movers's Atlas marks.  Eaton challenges the court's assessment of all eight factors.

**A.**

The strength-of-the-mark factor "focuses on the distinctiveness of a mark and its recognition among the public." *Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 427 (6th Cir. 2017) (quoting *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631 (6th Cir. 2002)). "A mark cannot be strong unless it is both conceptually and commercially strong." *Kibler*, 843 F.3d at 1073.

First, conceptual strength. "Marks are often classified in categories of generally increasing distinctiveness": (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *see also Progressive*, 856 F.3d at 428. Suggestive, arbitrary, and fanciful marks are "inherently distinctive and are entitled to protection." *Two Pesos*, 505 U.S. at 768. The court considered "Atlas" to be a suggestive mark and thus inherently distinctive.

Of course, the "existence . . . of distinctiveness is not the end of the inquiry." *Progressive*, 856 F.3d at 430 (quoting *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 419 (6th Cir. 2012)). The court must evaluate the mark's commercial strength since "[a] mark can be 'conceptually strong without being commercially strong, and thus weak.'" *Id.* (quoting *Kibler*, 843 F.3d at 1074).

"Proof of marketing" may demonstrate commercial strength. *Id.* The court found "Atlas" commercially strong based solely on Atlas Movers's advertising expenditures. Eaton contends that Atlas Movers's spending alone cannot support that finding. But advertising expenditures expose consumers to a trademark, increasing its public recognition. *Kibler*, 843 F.3d at 1074. Although advertising expenditures, standing alone, do not always prove commercial strength, *see, e.g.*, *Progressive*, 856 F.3d at 430, they are sufficient in this case because Atlas Movers extensively advertised and the district court could have reasonably inferred that it created "actual market recognition." *Cf. Homeowners Grp., Inc. v. Home Mktg. Specialists*, 931 F.2d 1100, 1108 (6th Cir. 1991). Therefore, the court did not clearly err in finding that Atlas Movers marketed "Atlas" to an extent that the public recognized it.

Undeterred, Eaton seeks to demonstrate Atlas's weakness "by presenting evidence of 'extensive third party use of similar marks.'" *Progressive*, 856 F.3d at 429 (quoting *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 794 (6th Cir. 2004)). The court rejected Eaton's attempt to do so, finding that it "presented no evidence that any third party uses, or ever used, ATLAS to offer Transportation or Logistics Services, or even in the transportation and logistics industry." Eaton lists this as an error, maintaining that it offered record evidence showing that other transportation companies use Atlas. True, it offered records, but the court properly discounted those due to overbreadth of the search. That is, the court found that the records Eaton offered as evidence encompassed businesses beyond the transportation industry and marks from companies no longer existing. Eaton needed to show that other transportation businesses "are actively using the marks," not just the "existence of marks in the records." *Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553, 557 (6th Cir. 2013) (quoting *Homeowners*, 931 F.2d at 1108). The judge acted within his province as factfinder in discounting this evidence.

**B.**

"Services and goods are related not because they coexist in the same broad industry but are related if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Leelanau*, 502 F.3d at 516 (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 282–83 (6th Cir. 1997)). Three principles guide this analysis: "First, if the parties compete directly, confusion is likely if the marks are sufficiently similar; second, if the goods and services are somewhat related, but not competitive, then the likelihood of confusion will turn on other factors; finally, if the products are unrelated, confusion is highly unlikely." *Progressive*, 856 F.3d at 431 (quoting *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 624 (6th Cir. 2003)).

The court concluded that the parties' services are related because they "engage in at least some of the same Transportation Services." Eaton complains that the court failed to examine "whether the services are similar and competitive with one another from the perspective of consumers." Yet the court did exactly that, finding them competitive because they were engaged in the same industry and served common customers. It correctly rejected Eaton's effort to

portray itself as solely a steel carrier: "[Atlas Movers's] Transportation and Logistics Services are identical to, or at a minimum, overlap with, [Eaton's] Transportation and Logistics Services enough, that if offered under similar marks, customers would believe—and have believed—that such Services came from the same source." This factor favors Atlas Movers.

**C.**

Courts give similarity considerable weight and consider the "pronunciation, appearance, and verbal translation of conflicting marks." *Leelanau*, 502 F.3d at 516–17 (quoting *Daddy's*, 109 F.3d at 283). The court must "view marks in their entirety and focus on their overall impressions, not individual features." *Id.* at 517 (quoting *AutoZone*, 373 F.3d at 795).

The trial court found the marks "identical" because they include Atlas "as the dominant factor." It then discounted "all words other than ATLAS," as merely those constituting "generic descriptors of the services" the parties offer.

Eaton urges that this analysis violated the anti-dissection rule, which requires the court "not to dwell on the prominent features of a mark and instead consider it as a whole." *Kibler*, 843 F.3d at 1077. The court, however, assured the parties that it "examined the parties' marks in their entireties, without ignoring or dissecting the marks." And it relied on this court's decision in *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 592 (6th Cir. 2015), to permissibly assign more weight to the dominant features of the marks. The court adequately supported its finding of similarity as weighing in Atlas Movers's favor.

**D.**

"Nothing shows the likelihood of confusion more than the fact of actual confusion." *Progressive*, 856 F.3d at 433 (quoting *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 517 (6th Cir. 2013)). Yet "[i]solated instances of confusion are insufficient to support a finding of likely confusion." *Id.*

The trial court determined that this factor favored Atlas Movers, based on "evidence of five people experiencing actual confusion from [Eaton's] use of ATLAS." Eaton calls this "de minim[i]s confusion," but it is confusion nonetheless. "[A] single instance of actual confusion

can, in some cases, 'increase the likelihood of confusion.'" *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 536 (6th Cir. 2014) (quoting *Groeneveld*, 730 F.3d at 517).

The court also relied on a consumer survey showing a 19% confusion rate as "circumstantial evidence of a likelihood of confusion." The court found that the survey evidence further supports Atlas Movers's claim. Although the evidence of actual confusion was slim, we review the district court's finding only for clear error. Given that standard of review, we cannot say that the district court erred.

**E.**

When comparing marketing channels, the court examines "how and to whom the respective goods or services of the parties are sold." *Progressive*, 856 F.3d at 434 (quoting *Leelanau*, 502 F.3d at 519). Less likelihood of confusion exists where: (1) "the goods are sold through different avenues"; (2) "the parties have different customers"; and (3) they "market their goods or services in different ways." *Id.* (quoting *Therma-Scan*, 295 F.3d at 636).

The trial count found overlap, relying on evidence showing common customers, and that both parties use websites, social media, and salesmen as marketing tools. Eaton says this "limited overlap" matters not since "Atlas Trucking makes most of its sales in a different way" than Atlas Movers. But how parties garner sales comprises just one of three considerations for this factor. And Eaton offers no challenge to the court's finding of common customers and marketing tools. With those findings intact, this factor weighs in Atlas Movers's favor.

**F.**

Customers attentive to marketing differences "diminish[] the likelihood of confusion." *Id.* at 435. Courts presume the customer is a "typical buyer exercising ordinary caution," *Homeowners*, 931 F.2d at 1111, but apply a "higher degree of care" when the customer "has a particular expertise or sophistication" or when services are "expensive or unusual," *Therma-Scan*, 295 F.3d at 638.

The trial court found that neither party "provided any evidence at trial on the degree of care [Eaton's] customers exercised when choosing or using [its] Transportation Services." The

court then went on, however, to opine that "[e]ven if they had done so, it would not reduce the likelihood of confusion because both parties use the same mark: ATLAS."

On appeal, Eaton argues that the district court overlooked evidence that shows that its customers are sophisticated purchasers. Even if that were true, Eaton's argument would not be meritorious because, as the district court noted, when "marks are quite similar, then purchaser care will decrease the likelihood of confusion only minimally because the care and skill which a purchaser will have used when deciding which [product] to buy will not have necessarily extended to his decision regarding which [party] to buy from." *Daddy's*, 109 F.3d at 286. As discussed above, the marks are functionally identical, so the degree of purchaser care has little to no impact on the resolution of the case, and the district court correctly determined that this factor is "neutral."

## G.

The intent factor concerns the defendant's "intent to benefit" from the other mark's recognition. *Progressive*, 856 F.3d at 435.

The trial court found that Eaton's "use of ATLAS with knowledge of [Atlas Movers's] prior use of ATLAS" and its "failure to exercise diligence before using ATLAS" constituted "circumstantial evidence of [Eaton's] adverse intent" to benefit from using the Atlas mark. Eaton contends that the court lacked a basis to infer adverse intent after Eaton presented direct evidence of no intent to benefit from the Atlas mark. The court need not accept Eaton's testimony; it could properly choose to credit other, conflicting evidence of intent. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("[T]he law makes no distinction between the weight or value to be given to either direct or circumstantial evidence." (citation omitted)).

## H.

"A strong possibility that either party will expand its business to compete with the other's increases the likelihood of consumers confusing the sources of the parties' products." *Kibler*, 843 F.3d at 1082. This factor is "neutral where neither party put forth evidence of significant expansion plans." *Maker's Mark*, 679 F.3d at 424.

The court found this factor "not relevant" because the parties already compete by "offer[ing] identical, or at least overlapping" services.  Eaton argues that the court "selectively" cited testimony in reaching its conclusion.  But weighing evidence falls outside the typical clear-error realm.  *See Panteleris v. Panteleris*, 601 F. App'x 345, 350 (6th Cir. 2015).

\*          \*          \*

The factors "imply no mathematical precision, but are simply a guide to help determine whether confusion is likely."  *Leelanau*, 502 F.3d at 515 (quoting *Homeowners*, 931 F.2d at 1107).  The court found that the "most important" factors—similarity and strength of the mark—favor Atlas Movers.  *Maker's Mark*, 679 F.3d at 424.  It went on to consider the other six and concluded that none favored Eaton.  We agree.

## IV.

Given that the district court resolved the claim that Atlas Movers used "Atlas" for logistics in commerce prior to Eaton having used it, this conclusion forecloses Eaton's claim to "Atlas Logistics" ownership.  Though Eaton insists that its claim is "unrelated and should be decided independently" from Atlas Movers's claim, we see it differently.  The trial court correctly found that Eaton's use of "Atlas Trucking" *and* "Atlas Logistics" likely causes confusion with Atlas Movers's use of "Atlas."  This finding prevents Eaton from owning or using the infringing mark Atlas Logistics.  *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673 (1999); *CFE Racing*, 793 F.3d at 594.

## V.

We AFFIRM.