SUTTON, Circuit Judge.
Artistry, Ltd., a jewelry wholesaler, sells its products to retailers across the country. When Sterling Jewelers began marketing a line of jewelry under the name "Artistry Diamond Collection," Artistry, Ltd. accused Sterling of infringing its trademark. The district court granted summary judgment to Sterling after concluding that its mark was not likely to confuse consumers in the distinct market in which it operated. We affirm.
I.
Sterling is the largest specialty jewelry retailer in the country. It operates in all 50 States in roughly 1,300 stores, including Kay Jewelers and Jared.
Artistry, Ltd. is less well known. Based in Skokie, Illinois, the small family-owned company does not sell its products directly to end consumers. It is a wholesaler, essentially a middleman, that purchases jewelry from manufacturers and sells it to jewelry retailers. The company markets its *754 products to jewelry retailers through industry trade shows, industry publications, and sales representatives.
Although Artistry, Ltd. has hundreds of retail customers, it claims that it does not sell to any retailer that knocks on its door. It focuses on "up market" retailers: independent jewelry stores and high-end department stores. R. 53-1 at 32.
Kay Jewelers began advertising its "Artistry Diamond Collection" on television in 2012, which caught the attention of Artistry, Ltd. As Artistry, Ltd. sees it, Kay is a "mall brand," id. at 45, which targets the "mass market," not upscale consumers, id. at 32. Artistry, Ltd. worries that it will suffer if those in the jewelry industry, especially high-end retailers and ultimate consumers, believe that Artistry, Ltd. supplies Kay or becomes affiliated with it in their minds. Artistry, Ltd. also worries that its goodwill rests in the hands of Kay, particularly if the Artistry Diamond Collection flops or otherwise diminishes the "artistry" name.
Artistry, Ltd. never registered a trademark for its company name. When Sterling registered "Artistry Diamond Collection," "Artistry Diamonds," and "Artistry Blue Diamonds," among others, with the United States Patent and Trademark Office, the Office granted the applications. R. 1-1 at 2-3. But trademark law protects the first party to use the mark in commerce regardless of whether the party registered the mark. See 15 U.S.C. § 1125(a) ; Zazú Designs v. L'Oréal, S.A. , 979 F.2d 499, 502 (7th Cir. 1992). For its part, Artistry, Ltd. started doing business under that name in 1982. It asked Sterling to stop using "Artistry" in connection with its Kay Artistry Diamonds brand and filed a petition with the Patent and Trademark Office to cancel Sterling's trademarks. See 15 U.S.C. §§ 1052(d), 1064.
Sterling responded by seeking a declaratory judgment that its use of the word did not infringe Artistry, Ltd.'s trademark and that its Artistry-related trademarks should not be canceled. R. 1-1. Artistry, Ltd. filed a counterclaim alleging that Sterling's use of the word violated its rights under the Lanham Act and the Ohio Deceptive Trade Practices Act and qualified as trademark infringement and unfair competition under state common law.
The Patent and Trademark Office held Artistry's petition to cancel in abeyance pending resolution of this case. See 37 C.F.R. § 2.117. Sterling allowed some of the registrations to expire by declining to file affidavits certifying that the marks were used in commerce, but it still maintains several of its Artistry trademarks. See ARTISTRY DIAMONDS, Registration No. 4,389,571; ARTISTRY BLUE DIAMONDS, Registration No. 4,377,727; ARTISTRY BLACK DIAMONDS, Registration No. 4,377,728; ARTISTRY YELLOW DIAMONDS, Registration No. 4,552,829; ARTISTRY GREEN DIAMONDS, Registration No. 4552830; ARTISTRY PURPLE DIAMONDS, Registration No. 4,598,805.
Here is a comparison of how each company uses "Artistry":
*755 ?
The district court distilled the dispute and the assortment of claims and cross-claims into one question: Would consumers likely be confused about the source of Sterling's "Artistry Diamond Collection"? No, the court concluded, and it granted summary judgment to Sterling on all counts. Artistry appeals.
II.
A word or two is in order about the standard of review. At summary judgment, the question is whether one side or the other should win as a matter of law. Fed. R. Civ. P. 56 ; see Hardrick v. City of Detroit , 876 F.3d 238, 243 (6th Cir. 2017). Fresh review applies to the district court's summary judgment decision. Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr. , 109 F.3d 275, 279-80 (6th Cir. 1997). We have said that the ultimate question in a Lanham Act case-are consumers likely to be confused about the source of a mark?-is one of law. Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc. , 679 F.3d 410, 422-23 (6th Cir. 2012). Even so, it may be helpful to think about the issue as a mixed question of fact and law. Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc. , 856 F.3d 416, 427 (6th Cir. 2017). The question has factual components (e.g., what evidence of confusion has been shown?) and legal components (e.g., what counts as cognizable confusion?). In such cases, as the Supreme Court recently reminded us, it is well to keep in mind what component presents itself at each stage of the analysis. "[T]he standard of review for a mixed question all depends ... on whether answering it entails primarily legal or factual work." U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC , --- U.S. ----, 138 S.Ct. 960, 967, 200 L.Ed.2d 218 (2018).
In the abstract, a Lanham Act claim turns on whether two marks likely will confuse consumers. In the concrete, this *756 Lanham Act claim turns on whether the relevant consumers likely will be confused over whether the "Artistry Diamond Collection" comes from "Artistry, Ltd." As is their wont, the courts have identified a slew of non-exclusive factors to channel this inquiry: (1) the strength of the mark; (2) the relatedness of the goods or services; (3) the similarity of the marks; (4) any evidence of actual confusion; (5) the marketing channels of each product; (6) the likely degree of purchaser care; (7) the alleged infringer's intent; and (8) the likelihood of expansion. Daddy's Junky , 109 F.3d at 280. Each factor presents a question of law and fact, not math. As potential proxies for the kind of confusion that the Lanham Act prohibits, each factor's relevance and relative importance will depend on the facts of each case. Id. Each case, like each party, is unique.
The essence of Artistry, Ltd.'s claim is this: Both companies use "artistry," both sell jewelry, and hence the existence of products from both companies is likely to confuse consumers as to their origin. There are two basic problems with this theory.
The first problem implicates the first trio of factors: the marks' strength; the goods' similarity; and the marks' similarity. The word "artistry," like the word "artisan," is not an innovation when it comes to craft goods, craft food, craft drink-craft anything. It is a run-of-the-mine description, one not likely to distinguish one product from another. The less distinctive a mark, the less likely it will breed confusion when used by others. AutoZone, Inc. v. Tandy Corp. , 373 F.3d 786, 793-94 (6th Cir. 2004). Artistry, Ltd.'s owner acknowledged that she knew of several other firms that used that word. Other evidence suggests that at least twenty-three other jewelry companies used the word in some way, shape, or form, including sixteen that used the word in their company name. All of this diminishes the likelihood that a consumer who comes across Artistry, Ltd.'s name would think of Kay's Artistry Diamond Collection and become confused by the existence of the same word in both.
Case law points in the same direction. "Bliss" is not likely to confuse consumers of beauty products. Bliss Salon Day Spa v. Bliss World LLC , 268 F.3d 494, 497 (7th Cir. 2001). "Platinum" is not likely to confuse consumers of financial services. Platinum Home Mortg. Corp. v. Platinum Fin. Grp. , 149 F.3d 722, 730 (7th Cir. 1998). "Lean" is not likely to confuse consumers of low-calorie food. Luigino's, Inc. v. Stouffer Corp. , 170 F.3d 827, 831 (8th Cir. 1999). "Kik" and "kick" are not likely to confuse consumers of tabletop soccer games. Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co. , 513 F.2d 1183, 1188 (2d Cir. 1975). "Smart" is not likely to confuse consumers of healthy food. Promark Brands Inc. v. GFA Brands, Inc. , 114 U.S.P.Q.2d (BNA) 1232, 1244-45 (T.T.A.B. 2015). And "best" and "premier" are not likely to confuse consumers of high-quality services. In re Best Software, Inc. , 58 U.S.P.Q.2d (BNA) 1314, 1317 (T.T.A.B. 2001).
The same is true with "artistry" and jewelry consumers. It is a weak mark, one that differs at most in modest degree but not in kind from like-seen words and their derivatives in the jewelry business: precious, gorgeous, luxury, vintage, style, forever, creative, crafted, sparkling, exquisite, elegant, and so on. Think about it another way: How many jewelers and related types of craftsmen are not trying to associate their product with artistry and these other words? The words indeed describe the goal of virtually all jewelry making and selling. This is not a term like De Beers, Fabergé, or Tiffany, a random name that over time has become associated with a product and *757 quality. It is difficult to sell jewelry without using words like "artistry," "artistic," or "artisan" or for that matter any of the others listed above.
Even on their own terms, the companies use the marks differently. One uses its mark to brand products (called a "trademark"); the other uses its mark to brand a company and the wholesale services it provides (called a "service mark").See 1 McCarthy on Trademarks and Unfair Competition §§ 3:4, 9:12 (5th ed. 2018). Confusion is less likely when companies use their marks to brand different goods and services. Autozone , 373 F.3d at 798.
Other differences between each company's use of the mark further undermine the claim. One company adds two additional words to "artistry," the other just one. And each uses different fonts and scripts, further suspending belief that a consumer would be duped into thinking one was the other.
That leads to the second problem-the distinct nature of the consumers targeted by each company's set of products-which implicates these four factors: evidence of actual confusion; the marketing channels of each product; the likely degree of purchaser care; and the alleged infringer's intent. In a typical infringement case, the owner of the well-known mark goes after the proprietor of the copycat mark, which is trying to exploit the distinguished mark's goodwill in the process. Consumers who crave pizza from Little Caesar's Pizza might accidentally buy pizza from Pizza Caesar instead. Little Caesar Enters., Inc. v. Pizza Caesar, Inc. , 834 F.2d 568, 571 (6th Cir. 1987).
Not so in this case. The less well-known company, Artistry, Ltd., is not trying to pawn off its goods as Sterling's goods. Quite the opposite: It fears that ultimate consumers might hesitate to purchase its jewelry in high-end retail stores if they think that Artistry, Ltd. is associated with Kay, a "mall brand." And it fears that high-end retailers (its primary customers) might hesitate to do business with it because of the same misimpression. Sure, Artistry, Ltd. might benefit in some ways from an association with Sterling, as some of Artistry's jewelry is comparably priced to products at Kay Jewelers and thus could benefit from all of Kay's advertising. R. 51 at 26. All in all, however, it is for Artistry, Ltd. to define its claim-and fear-and it is not the first company to fear dilution of its commercial goodwill from association with a company that peddles lower priced or lower quality goods. Ameritech, Inc. v. Am. Info. Techs. Corp. , 811 F.2d 960, 964-65 (6th Cir. 1987).
The problem, then, is not the theory of violation. It is that the risk of confusion is remote in this setting, whether we focus on ultimate jewelry consumers or Artistry, Ltd.'s high-end retail customers. Start with ultimate consumers. The problem with this theory is that Artistry, Ltd. does not sell to ultimate consumers. It sells to retail customers and discourages them from marketing jewelry under its name. Ultimate consumers almost never know that they are buying Artistry, Ltd. products. True, Artistry, Ltd. has pointed to some instances where its retail customers acted against its wishes by using its name when selling its products. But the company has not identified a single ultimate consumer confused by the two uses of artistry.
Artistry, Ltd. also says that its retail customers may have been confused. But that possibility is also unlikely. Start, most problematically, with the degree of purchaser care. Jewelry retailers are a discerning group of buyers. Anyone who sells jewelry at retail is apt to know a thing or two about jewelry, as success depends on it. Plus, wholesalers sell their wares in *758 bulk, making each high-volume sale a substantial investment. The risk in this setting that jewelry retailers will refuse to buy from Artistry, Ltd. because of a misapprehension that the wholesaler supplies Kay is highly unlikely.
The marketing channels of the two goods also lessen the possibility of confusion. Artistry, Ltd. advertises its products in industry trade magazines and at industry trade shows, and it relies on sales representatives to sell its products. Artistry, Ltd. assigns each customer a dedicated personal representative, who manages the relationship. It acquires new customers through referrals and trade shows, where Artistry, Ltd. representatives talk with potential customers and show them sample products. The highly personal nature of its sales methods diminishes further any risk of confusion. Customers who might wonder about a potential Artistry, Ltd.-Kay connection may simply ask a representative for clarification. Any potential confusion thus is likely to be short-lived. Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc. , 931 F.2d 1100, 1110 (6th Cir. 1991) (examples of short-lived confusion are worthy of little weight (quotation omitted) ).
In fact, that's what the record shows. After Kay launched its advertisements in 2012, four existing or potential customers asked Artistry whether it sold to Kay or was affiliated with it. Two of Artistry's competitors, a publisher of an industry trade magazine and a vice president of a jewelry trade show, asked the same things. In each instance, the party was sophisticated enough to discern a difference between Artistry, Ltd. and Kay and to ask about the difference. In each instance, Artistry representatives cleared things up.
Artistry, Ltd. resists this conclusion on the ground that these questions qualify as evidence of actual confusion. But questions are not answers. And questions about potential affiliation do not necessarily demonstrate confusion in this setting. Duluth News-Tribune, a Div. of Nw. Publ'ns, Inc. v. Mesabi Publ'g Co. , 84 F.3d 1093, 1098 (8th Cir. 1996). To the contrary, questions about potential affiliation confirm that these sophisticated retailers discern a difference between the marks, or at least put themselves in a position to do so. Fisher Stoves, Inc. v. All Nighter Stove Works, Inc. , 626 F.2d 193, 195 (1st Cir. 1980).
Artistry, Ltd. also complains about the district court's use of the expert report documenting the use of "artistry" by other jewelry companies. It points out that some of the companies do not use the word as a trademark-in other words, they do not use the word to identify a product or service. DeBeers, for example, uses the word "artistry" on its website to depict the expert craftsmanship of its "Talisman" and "Aria" collections. That is a fair point but one infected by overstatement. The report still documents sixteen companies that, like Artistry, Ltd., use the word "artistry" in their company name.
Artistry also complains that the report was unsworn. The district court, it contends, should have excluded it from the summary judgment record as hearsay. But Artistry, Ltd. never objected to the introduction of the report on this ground and thus forfeited the objection. Had Artistry, Ltd. raised this objection at the proper time, Sterling could have submitted a sworn report, one to which a witness could have testified at any trial.
We affirm.